In Matter of Petition to Intervene of: East Maine Township Community Association, et al., Petitioners to Intervene-Appellants, v. Pioneer Trust and Savings Bank et al., Plaintiffs-Appellees, v. County of Cook, a body politic and corporate, Defendant-Appellee.

Gen. Nos. 47,124, 47,150, 47,186 consolidated.

First District, Second Division.

October 22, 1957.

Released for publication December 4, 1957.

Benjamin S. Adamowski, State's Attorney of Cook county (L. Louis Karton, and Charles D. Snewind,

Assistant State's Attorneys, of counsel) for petitioner; Bernard M. Kaplan, of Chicago (George L. Kandlik, of counsel) for petitioners to intervene-appellants.

William C. Wines, of Chicago, for plaintiffs-appellees.

JUDGE FEINBERG delivered the opinion of the court.

Petitioners to intervene, hereinafter referred to as petitioners, appeal from an order denying them leave to intervene in the instant cause. The complaint is for a declaratory judgment to declare a county zoning ordinance unconstitutional as applied to plaintiffs' property. The hearing upon the complaint, to which the county of Cook was the only party defendant, resulted in a decree declaring the county zoning ordinance in question unconstitutional as applied to plaintiffs' property, restraining the county authorities from interfering with the construction of a drive-in outdoor movie theatre upon plaintiffs' property, and directing the authorities to issue a permit for the construction of said theatre.

Petitioners, upon this appeal, also assign as error the refusal of the trial judge to disqualify himself to pass upon the petition for leave to intervene. The judge's son filed the original action as attorney of record. Later the judge's son-in-law was substituted as attorney of record for plaintiffs. Because of the relationship of the trial judge to the attorney of record, petitioners moved that the judge disqualify himself and reassign the case to some other judge.

We allowed the separate petitions for leave to appeal from the decree by the defendant county of Cook and the petitioners. The three appeals have been consolidated for hearing.

The petition alleges, inter alia, that plaintiffs are the owners of an irregular tract of unimproved land,

252

consisting of approximately 50 acres, acquired by them in 1955, located on the east side of Milwaukee Avenue between Dempster Street and Golf Road, in Maine Township, an unincorporated area of Cook county; that plaintiffs' property has a frontage of approximately 1,000 feet on Milwaukee Avenue, a frontage of about 653 feet on Washington Street, and approximately 666 feet of frontage on Church Street; that plaintiffs' property was and had been zoned by the county zoning ordinance adopted August 20, 1940, as an F-District (Farming); that certain of these petitioners (naming them) are the owners of contiguous property, which extends to the boundary line of plaintiffs' property, upon which the proposed outdoor movie theatre was to be erected; that some of the other petitioners (naming them) own adjacent property in close proximity to plaintiffs' property. The location and description of the property and the interests of the respective petitioners are clearly set forth in the petition. All of the property involved in the instant action is in Maine Township, within the boundaries of Cook county, and governed by the county zoning ordinance.

The petition further alleges that petitioner Ehrns maintains a residence on their property, which is contiguous to plaintiffs' property, valued in excess of $35,000; that the fence of the drive-in theatre runs along the west boundary line of their property; that the Allendale ·subdivision, zoned as an F-District (Farming), is subdivided into fifteen lots, on which there are located twelve existing homes and residences; that the homes and residences located along the west line of said subdivision on Ashland Avenue are directly contiguous to plaintiffs' property and to the fence which is intended to enclose said proposed outdoor motion picture drive-in theatre. Some of the other petitioners have residences which are contiguous and adjacent to the south boundary of the proposed drive-

253

in movie theatre, ranging in value from $25,000 to $42,000.

The petition further alleges that nearly all of the petitioners acquired title to their properties in reliance upon the county zoning ordinances classifying their properties, and long before plaintiffs acquired their property. Petitioner East Maine Township Community Association is a corporation organized not for profit, consisting of a membership in excess of thirty-five real estate property owners and taxpayers, who live and have properties in said East Maine Township and adjacent and contiguous to plaintiffs' land.

Petitioner St. Mathews Evangelical Lutheran Church is a religious corporation and the owner of real estate adjacent to the property of plaintiffs, and having a frontage of 303.5 feet on the west side of Milwaukee Avenue, improved with both a church building and school structure, and located approximately 100 yards south of and across the street from plaintiffs' property. The congregation has approximately 275 to 300 persons in attendance from surrounding residential areas. Day and evening religious services are conducted at the church, and social and community affairs are conducted in said church and school buildings. About fifty-five students of grade school and kindergarten level are enrolled in the school conducted by said petitioner. The church has been located at the present site for the past fifty years or more.

All of the petitioners allege that the value of their properties will be materially and adversely affected by the construction of said drive-in movie theatre.

It is further alleged that plaintiffs, without applying to the Zoning Board of Appeals of Cook county for a variation of the zoning ordinance as applied to plaintiffs' property, filed their complaint for declaratory judgment; that no notice of the filing of the complaint was given to any of the petitioners, and that they had

no knowledge of the bringing of said action or the hearing had upon the complaint, and did not discover until after the entry of the declaratory judgment that such an action had been brought; and that plaintiffs did not exhaust their legal remedies provided by the applicable statutes and the county zoning ordinance.

The authority of the county to enact a zoning ordinance and to establish a Zoning Board of Appeals is derived from Chapter 34, § 152i to 152o, Illinois Revised Statutes, 1955.

█ The county zoning ordinance, of which we must take judicial notice, (Chapter 51, par. 48a and 48b, Ill. Rev. Stat. 1955), provides with respect to variations (Section 21):

"B. *Variations.* Where in a specific case, after written denial of a permit by the enforcing officer, an application for a variation is made in writing to the Zoning Board of Appeals explaining that because of certain exceptional conditions peculiar to applicant's property or its environment the strict application of the regulations of this ordinance would result in practical difficulties and particular hardships upon the owner, the Zoning Board of Appeals shall consider the case at a public hearing, 15 days notice of which shall have been given as prescribed by statute, and shall determine whether or not the facts are such as to warrant a variation from the comprehensive zoning plan. If the Zoning Board of Appeals determines, by a concurring vote of not less than four members, that the proposed variation or some modification of it will not (1) reduce the minimum areas or dimensions, by more than 25 per cent, (2) impair an adequate supply of light and air to adjacent property, (3) increase the congestion in public streets unreasonably, (4) increase the hazard of fire, (5) endanger the public safety, (6) diminish or impair the values of property within the surrounding area, (7) or in any other respect impair

255

the public health, safety, comfort, morals and welfare of the people, it shall adopt a motion embodying such findings, and shall direct the issuance of a permit.

"C. *Appeals To Courts.* Within 30 days after the filing of any decision or variation of the Zoning Board of Appeals in the office of said Zoning Board, any person or persons jointly or severally aggrieved by such decision or variation, or any officer, department, board or bureau of the county, may appeal to a court of record in the manner prescribed by statute."

Chapter 34, § 152k.4, makes all final administrative decisions of the Board of Appeals subject to judicial review, pursuant to the provisions of the Administrative Review Act. The statute which enables counties to adopt zoning ordinances and to classify property, and consider subsequent applications for variations after the classifications have been made, all require public hearings and notice to property owners having property within the zoned area. Where there is a refusal by the Zoning Board of Appeals to rezone or vary the classification upon application made by a property owner, the appeal is allowed upon condition that notice be given as provided by statute.

Petitioners urge that the Circuit Court had no jurisdiction to entertain the instant complaint by plaintiffs, because plaintiffs have not exhausted their remedies under the statutes and county zoning ordinance. There is no attack by plaintiffs upon the constitutionality of the county zoning ordinance as a whole, but only as applied to plaintiffs' property.

Petitioners claim that Bright v. City of Evanston, 10 Ill.2d 178, holds that the trial court had no jurisdiction. We find no statement to that effect in the Bright case. The court there clearly said (p. 185):

". . . where the claim is merely that the enforcement or application of a particular classification to the plaintiff's property is unlawful and void, and no

256

attack is made against the ordinance as a whole, judicial relief is appropriate *only* after available administrative remedies have been exhausted." (Italics ours.)

The court there further said (p. 186):

". . . Under such circumstances he should apply in the first instance to the board of appeals, and if unsuccessful there he can seek judicial relief. His action for a declaratory judgment without first exhausting his administrative remedies will not lie."

We followed the rule in the Bright case in Sheridan Shores, Inc. v. City of Chicago, 13 Ill.App.2d 377 (leave to appeal denied by the Supreme Court).

Even if it be considered that the complaint in the instant case is of an equitable nature because it seeks injunctive relief and the decree grants it, it does not entitle a court of equity to assume jurisdiction where there is an adequate remedy at law. The zoning statutes and ordinance in the instant case afforded plaintiffs an adequate remedy, and we regard the mandatory provisions of Chapter 110, par. 265, § 2, Administrative Review Act, as prohibiting pursuit of any other remedy, except under the zoning statute and the ordinances adopted pursuant thereto. It is there provided:

"In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed after the effective date hereof."

■ The Declaratory Judgment statute is a general statute, which may encompass rights, equitable and legal. Such a general statute under the well settled rule of this state must yield to a particular and specific enactment upon the same subject. The specific statute, providing for the hearing before the Zoning Appeal Board and the review of its decision, provided ·by the zoning act and the ordinance, and made subject to the

257

Administrative Review statute, will prevail over the general provisions in the Declaratory Judgment statute. Sheridan Shores, Inc. v. City of Chicago, supra, p. 384; Robbins v. Lincoln Park Commissioners, 332 Ill. 571, 579; Moyer v. Board of Education, 391 Ill. 156, 159; Department of Revenue v. Wakeford Hardware Co., 2 Ill.App.2d 66, 69.

Where formerly the decision of the Zoning Board of Appeals was merely advisory to the City Council (Bright v. City of Evanston, supra), by an amendment to the Cities and Villages Act (Ch. 24, par. 73—4, adopted June 30, 1955) the decision is not now subject to review by the corporate authorities. The amendment reads:

"A decision of the board of appeals shall not be subject to review, reversal or modification by the corporate authorities but shall be judicially reviewable under the provisions of Section 73—6.01."

 The zoning enactment and the Administrative Review Act clearly express the legislative intent that no variation of the classifications contained in zoning ordinances shall be made by the Zoning Appeal Board except by applications made to that board, notice to owners of property affected in the area by such desired variation, and the right of appeal by the applicant or any party aggrieved by the decision of the Board of Appeals in the manner prescribed by the Administrative Review Act.

These statutes cannot be circumvented by invoking the instant proceeding under the Declaratory Judgment Act, where the aggrieved owners of property are not made parties and are given no notice of the hearing.

The circumstances in the instant case demonstrate the importance and necessity for the declared rule in the Bright case, that plaintiff must exhaust his remedies under the zoning act, the ordinances, and the Ad-

258

ministrative Review Act, and cannot in the first instance apply to the courts for a declaratory judgment.

Under the zoning statute and the ordinance passed pursuant thereto, as well as the Administrative Review Act, petitioners, and especially those whose property is adjacent or contiguous to plaintiffs' property, are vitally affected by the declaratory judgment entered in the instant case. They are aggrieved parties within the meaning of the statutes and ordinance referred to, and entitled not only to intervene in the instant cause, but are entitled to appeal and attack the declaratory judgment, where it indisputably appears that plaintiffs did not exhaust their remedies as indicated.

 The question presented as to whether the trial judge should have disqualified himself, in importance, transcends all other considerations in the case. It goes to the very root of our system of justice, which guarantees to every litigant a fair and unbiased hearing. There are many cases which have considered this question, and much has been written upon the subject.

Canon 13 of the Canons of Judicial Ethics of the American Bar Association provides as follows:

"A judge should not act in a controversy where a near relative is a party; he should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position or influence of any party *or other person.*" (Italics ours.)

The Supreme Court in Hunter v. Troup, 315 Ill. 293, 302; In re Mitgang, 385 Ill. 311, 324; and In re Moore, 8 Ill.2d 373, 378, took notice of the Canons of Judicial Ethics of the American Bar Association and held that while they are not binding upon the courts as such, they constitute a safe guide to professional conduct, to which they apply, and an attorney violating such canons could be subjected to disciplinary proceedings.

259

A comprehensive review of the cases dealing with this question will be found in 50 American Law Reports 2d 144. It is there stated:

"While at common law a judge was not disqualified by reason of his relationship to an attorney appearing in a case before him, there has been a widespread and wholesome recognition by the judiciary, bar associations, and legislatures, of the fact that human frailty is not always overcome by trained judicial habits of impartiality, and that the human limitations of a trial judge resulting from his 'interest' because of a relationship with one of the attorneys may, at least indirectly, result in the deprivation of a just hearing. As a more or less direct result of this recognition of the fact that courts should do nothing which creates even a suspicion that there has been an improper interference with the course of justice . . . ."

Callahan v. Childers, 186 Okla. 504, 506, 99 P.2d 126, quoted with approval the statement from State ex rel. Garrett v. Freeman, Judge, 102 Okla. 291:

"Judge Freeman asserts, and doubtless feels, that he is wholly without prejudice or bias in the cause, and that there is no reason for his disqualification.

"It is the duty of this court, under the exercise of its superintending power, not only to secure to every litigant a fair and impartial trial, but also to see to it that it is done, insofar as possible, in such a manner as will beget no suspicion of the fairness and integrity of the judge . . . .

"It is important, not only that this case be tried by a fair and impartial judge, but also that this court shall see to it that no suspicion attach to the course of judicial proceeding, in order that it may be made apparent, in so far as possible, to the community that the judicial proceedings are impartial and beyond reproach; this to the end that the confidence in our judicial system may be sustained."

260

To the same effect is Smith v. Department of Registration & Education, 412 Ill. 332, where the respondent, called upon to answer charges of unprofessional conduct as a physician, objected to the committee of doctors appointed by the Department in accordance with its rules of procedure, charging that the committee was prejudiced. The committee refused to disqualify itself, and upon appeal the decision of the board to revoke the license of respondent was reversed, the court pointing to the vital importance of a fair hearing before an unbiased tribunal, and that the committee should have refused to act.

In People ex rel. Rusch v. Cunningham, 308 Ill. App. 63, involving a contempt proceeding, where the statute makes no provision for change of venue and where the trial judge was petitioned to disqualify himself on account of prejudice, this court quoted with approval from Schmidt v. United States, 115 F.2d 394, where it was said:

" 'The judge should not have been required to try the contempt cases, while he was confronted with the affidavits of bias and prejudice to which appellants had appended their certificates of good faith. This is no reflection upon the judge, nor upon any judge so confronted. Even a judge may not put aside the propensities of human nature as easily as he does his robe . . . . We do not adjudge that any unfairness permeated the trial of these cases, but to eliminate the "chance" that such existed, the judgment should be reversed and the cases remanded for further proceedings before another judge.' "

It is imperative we maintain the confidence of the public in our system of justice. In this jurisdiction, where many other judges were available and could have heard the instant application for leave to intervene, the trial judge, under the circumstances present in the instant case, should have disqualified himself and trans-

ferred the case for reassignment to another judge. Smith v. Department of Registration & Education, supra.

For the reasons given the decree is reversed and the cause remanded with directions to dismiss the complaint at plaintiffs' costs.

Reversed and remanded with directions.

KILEY, P. J. and LEWE, J., concur.