72 N.J. Super. 459 (1962)
179 A.2d 33
STATE OF NEW JERSEY, RESPONDENT,
v.
CHARLES DICKERSON OR CHARLES R. DICKERSON, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1962.
Decided March 1, 1962.
*460 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Monroe Levy, assigned counsel, argued the cause for appellant.
Mr. Joseph P. Merlino, Assistant Prosecutor of Mercer County, argued the cause for respondent (Mr. Stanley E. Rutkowski, Prosecutor of Mercer County, attorney).
PER CURIAM.
Defendant, Charles Dickerson, moved for leave to withdraw his plea of non vult to an indictment for the crime of robbery, N.J.S. 2A:141-1. His motion was denied, hence the present appeal.
Dickerson, while on parole, was indicted, together with Anasthase Mirisis and William Ford. The indictment *461 charged that on June 5, 1958, in Trenton, N.J., they did forcibly take from the person of Anthony De Lucia, by violence and putting him in fear, cash in the amount of $4,355.14 and bank checks of $17,139.53, having a total value of $21,474.67 [sic], being moneys belonging to the New Jersey Tobacco Company, contrary to N.J.S. 2A:141-1.
On October 2, 1959 each of the defendants pleaded not guilty. Subsequently, Mirisis and Ford retracted their pleas of not guilty, entered pleas of non vult and were sentenced on October 20 to serve a term of 10 to 15 years in the State Prison.
On October 23 Dickerson completed and executed a Criminal Procedure Form 13A which was witnessed by his counsel. Some of the questions on Form 13A and his answers were as follows:
"4. You are charged with 1-Robbery 2A:141-1
Do you understand the nature of this offense? Yes
5. The offense with which you are charged is a (high) misdemeanor which by law is punishable by 15 years or $5,000 fine or both plus 5 years additional under 2A:151-5
Do you understand this? Yes
6. Are you aware that if you plead guilty, non vult or nolo contendere the matter of punishment is entirely up to the court and that it may sentence you to the maximum penalty provided by law? Yes
7. Have any promises as to the sentence you will receive been made to you by the prosecutor or anyone else? No
8. In view of your answers to the foregoing questions, how do you intend to plead? non vult"
On November 6, when Dickerson appeared in the Mercer County Court to be sentenced, his counsel moved to change his plea of non vult to that of not guilty. What ensued appears in the colloquy set out by way of appendix to this opinion. It will be seen that the court closely inquired into the circumstances attending the execution of Criminal Procedure Form 13A and defendant's appearance in court on October 23 when he pleaded non vult. Essentially, what *462 defendant relied on in seeking to change his plea of non vult to not guilty was the alleged promise by a detective that if he pleaded non vult he would be sentenced only for the balance of his parole time. Significantly, he admitted that the sentences given to Mirisis and Ford had something to do with his present request to change his plea.
At the conclusion of the colloquy the judge sentenced Dickerson to the same 10 to 15-year term he had given to Mirisis and Ford with credit for the time he was confined in jail. On March 15, 1960 Dickerson by petition again applied for leave to change his plea to not guilty. This request was also denied. Subsequently his notice of appeal was filed and he was granted leave to proceed as an indigent.
It is argued that the court erred in denying the motion for leave to withdraw defendant's plea of non vult both before and after the imposition of sentence and that he was denied his constitutional rights.
The main contention is that a promise had been made by a detective for a short jail term if Dickerson would change his plea from not guilty to non vult. Defendant concedes in his brief that he was apprehended at Jacksonville Beach, Florida, and on September 23, 1959 he was returned to Trenton, N.J. During the entire trip he was in the custody of Mercer County detective John Carroll, to whom the defendant claims he denied his guilt to the robbery charge.
The motion to retract a plea of guilty is governed by R.R. 3:7-10(a) which requires that the motion for leave to withdraw a plea of guilty be made before sentence is imposed. It is noted that the rule makes no provision for a motion to withdraw a plea of non vult, but by analogy it is sufficiently similar to a plea of guilty that they may be treated alike. The withdrawal of a plea is not a matter of right, but is addressed to the discretion of the court. State v. Pometti, 12 N.J. 446, 452 (1953), affirming 23 N.J. Super. 516 (App. Div. 1952); Clark v. State, 58 N.J.L. 383 (E. & A. 1895). Before sentence is imposed, *463 the court will exercise its discretion liberally to enable the withdrawal of a plea to "correct manifest injustice." State v. Deutsch, 34 N.J. 190, 198 (1961). In the exercise of this discretion, the court must fairly and justly weigh the policy considerations which favor the finality of judicial procedures against the policy considerations that no man be convicted unless after a fair trial or the voluntary entry of a plea of guilty. State v. Deutsch, supra (34 N.J., at pp. 197-8).
The purpose of requiring defendants to answer the Criminal Procedure Form 13A is to assure adequate proof that the defendant has been advised of his rights so as to refute any subsequent claims to the contrary relating to defendant's plea and to determine whether the plea was made voluntarily and with understanding of the nature of the charge. R.R. 3:5-2(a). When defendant executed Form 13A he was represented by counsel, he answered the questions and stated that he understood the nature of the offense with which he was charged and that he knew the maximum penalty provided by law could be imposed if he pleaded non vult. He also denied that any promises had been made to him. Dickerson then made no claim that he did not understand the consequences of his plea, nor that he was inadequately represented. The only reason now advanced for his not being guilty was his sole interest in the length of time he would serve. His plea of non vult was deliberately and understandingly made.
In State v. Deutsch, supra, the defendant was charged with the offense of circulating forged schedules, invoices and trade acceptances. He at first entered a plea of non vult to an accusation containing 28 counts. Subsequently he moved for an order to retract his plea to that of not guilty. His motion was denied. However, it was supported by an affidavit and testimony to the effect that the invoices were not typed by him and the schedules were not in his handwriting or signed by him. On appeal he advanced the same grounds for his innocence. In addition, he urged that he *464 was confused since his counsel had little opportunity to talk to him and had neglected to explain the various documents which he had signed but had told him that he would "go over the papers [with him] later."
Since it appeared that he was in good faith asserting a defense on the merits (34 N.J., at pp. 196, 204), he was given leave to supplement the record by additional proofs of his innocence.
Deutsch is factually distinguishable from the present matter. Here there was no explanation of any defense, no lack of understanding of the charge or penalty, and no suggestion that his counsel did not have sufficient time in which to represent him.
When Dickerson appeared to be sentenced and moved to withdraw his plea, he offered no defense on the merits, nor was any explanation made outside of his bare assertion that he was not guilty. There was no intimation, not even the faintest, of a defense on the merits. It was when defendant became aware of the sentence given to his codefendants, of a term longer than he expected, that he sought to withdraw his plea. It is inconceivable if defendant was innocent, as he claims to have told detective Carroll, that he would later want to enter a plea of non vult, tantamount to an admission of guilt. The motion was a mere maneuver not related to the merits, designed solely to control the sentence. We observe that not even now does defendant in any way indicate a defense on the merits, or point to circumstances that conceivably might establish his innocence of the charge.
Defendant's disappointment with the sentence in prospect is not a valid ground to change a plea. The quantum of sentence (within the limits fixed by statute) is within the discretionary power of the sentencing judge. State v. Johnson, 67 N.J. Super. 414, 424 (App. Div. 1961).
If it were to be assumed that a promise was made, defendant is charged with knowledge of the illegal character of such an arrangement. The reliance on such alleged promise does not afford relief. In State v. Pometti, supra (23 N.J. *465 Super., at p. 521), the court commented upon the reliance on such an agreement:
"As stated, the illegal character of such an agreement is well known or is so generally recognized in the law as to render defendant and his counsel chargeable therewith. Reliance upon such an agreement by one with knowledge of its unlawful character cannot be sustained as a valid defense or a justifying circumstance for the withdrawal of a plea of nolo contendere, even if the same were in fact proven, particularly where, as here, defendant was at all times represented by counsel. Such does not constitute a deprivation of fundamental fairness entitling defendant to the relief sought."
From the foregoing, the denial of the motion to withdraw the plea was not unreasonable or an abuse of discretion.
It is further argued that denial of the motion to withdraw defendant's plea deprives him of the constitutional requirement to a speedy and public trial. N.J. Const. 1947, Art. I, par. 10. The denial of leave to change a plea does not constitute an infringement of the constitutional right of the accused to a trial by jury. State v. Pometti, supra (12 N.J., at p. 453).
Affirmed.

APPENDIX
THE COURT: Now, let's review what has taken place between us. You pled non vult on October 23. Now, do we have the statement that he signed?
THE CLERK: Yes.
THE COURT: Give it to him, will you please. Now, do you recognize that signature on the statement?
THE DEFENDANT: Yes, sir.
THE COURT: Did you sign it?
THE DEFENDANT: Yes, sir, I did.
THE COURT: Do you recall my asking if you understood the questions in the statement?
THE DEFENDANT: Yes, sir.
THE COURT: Do you recall my asking you if anyone used any force, made any threats or promises in taking the statement from you?
THE DEFENDANT: Yes, sir.
THE COURT: Do you now understand the questions in the statement?
THE DEFENDANT: Yes, sir, I do.
*466 THE COURT: Did anyone use any force, make any threats or promises in taking the statement from you?
THE DEFENDANT: Well, sir, there was a promise made on one statement that I gave.
THE COURT: You didn't tell me that at the time I asked you the first time.
THE DEFENDANT: I know, sir.
THE COURT: Isn't that true?
THE DEFENDANT: Sir?
THE COURT: You didn't tell me that before?
THE DEFENDANT: No, sir.
THE COURT: But you have that to say now?
THE DEFENDANT: Yes, sir.
THE COURT: What promise, may I ask, was made?
THE DEFENDANT: Well, sir, I was promised that I wouldn't do any more time than my parole time, which I have a year left to do on parole.
THE COURT: Who made that promise to you?
THE DEFENDANT: John Carroll.
THE COURT: Who is Mr. John Carroll?
THE DEFENDANT: Detective.
THE COURT: Why didn't you tell me that when you appeared before me the last time?
THE DEFENDANT: Well, sir, I didn't know how much time I was going to get out of this.
THE COURT: You don't know now.
THE DEFENDANT: No, sir, I don't.
THE COURT: Well, you have asked for permission to vacate or retract all these statements that you have signed and what you said to me in court previously. What is the reason for the request to change the plea of non vult?
THE DEFENDANT: Well, I'm not guilty, your Honor.
THE COURT: Did that not occur to you on October 23d?
THE DEFENDANT: Yes, sir, it did.
THE COURT: Why didn't you tell me?
THE DEFENDANT: Well, sir, it's like I said before. I was promised I wouldn't do any more than my parole bit, which was a year.
MR. RUHLMAN: Your Honor, may I say something for the record? Was any promise made to you, Mr. Dickerson, at all when this statement was signed?
THE DEFENDANT: No, there wasn't.
THE COURT: Any further reason for asking the court to vacate or permit you to retract the plea of non vult?
THE DEFENDANT: No, sir.
THE COURT: In that case I am ready to proceed with sentence. Now, Mr. Ruhlman, is there anything you have to say that would help me in resolving sentence?
*467 MR. RUHLMAN: I have nothing to say your Honor, unless Mr. Dickerson has.
THE COURT: In that case I will ask him if he has anything to say.
THE DEFENDANT: Yes, sir, I have something to say. I'm not guilty.
THE COURT: Why did you sign the statement? Why did you tell me you understood the questions on October 23, at which time you told me no one forced you to sign anything that wasn't true?
THE DEFENDANT: Yes, I know I told you.
THE COURT: Is there anything further?
THE DEFENDANT: No, sir; that's all.
THE COURT: I assume you know that William Ford and Marisis were sentenced by me last Friday?
THE DEFENDANT: Yes, sir.
THE COURT: You know the sentence they got, I further assume.
THE DEFENDANT: Yes, I do.
THE COURT: Would that have had anything to do with your present request to change the plea?
THE DEFENDANT: The time did, sir.
THE COURT: The time they got?
THE DEFENDANT: The time, yes, sir.
THE COURT: Is there anything further?
MR. RUHLMAN: No, sir.
THE COURT: Anything further from you aside from the fact that you now say you are not guilty?
THE DEFENDANT: No, sir.