89 N.J. Super. 28 (1965)
213 A.2d 262
STATE OF NEW JERSEY,
v.
BERNARD ROSENGARD, DEFENDANT.
STATE OF NEW JERSEY,
v.
BERNARD ROSENGARD AND GUY CRUEA, DEFENDANTS.
STATE OF NEW JERSEY,
v.
BERNARD ROSENGARD, GUY CRUEA AND PATSY A. STATILE, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal).
Decided September 13, 1965.
*29 Mr. Gregory J. Castano, Assistant Prosecutor (Mr. James A. Tumulty, Jr., Hudson County Prosecutor, attorney), for the State of New Jersey.
Mr. James F. McGovern, Jr., attorney for defendant Bernard Rosengard.
*30 SCHULMAN, J.C.C. (temporarily assigned).
Defendant Rosengard moves to dismiss some nine indictments brought against him as "Acting City Clerk and Assistant Municipal Clerk of the City of Jersey City." The notice of motion was grounded on the assertion that there was a conflict of interest in the dual positions held by the Prosecutor of Hudson County in that the prosecutor was also the city clerk of Jersey City on leave of absence. The motion further charged that the prosecutor on leave was charged with the responsibility of the criminal acts alleged in the indictments in that it was his bond that was surety for the person acting in said office of city clerk.
Attached to the notice of motion was the affidavit of Rosengard setting forth the appointment of one James A. Tumulty, Jr. as city clerk, his leave of absence, the appointment of defendant, together with certified copies of the municipal minutes covering the actions of the municipal body. Also contained in said affidavit were statements by defendant as to the prosecutor's malice towards him and, inferentially, that the indictments in question were prompted by such malice. Annexed to said affidavit were newspaper articles in the several leading newspapers of the State covering Tumulty's leave of absence as city clerk and his several attempts to appoint his successor (not defendant) as the acting city clerk. No answering affidavit was filed by the prosecutor, but an affidavit was filed by an investigator of his office alleging that from his investigation of the municipal minutes defendant Rosengard was never designated as acting city clerk but was actually the Clerk of Jersey City. Both sides filed briefs and the matter was orally argued. In addition, on one occasion, a codefendant, Cruea, testified as to his conversation with the prosecutor prior to his being brought before the grand jury which subsequently indicted him.
After oral argument and consideration of the affidavits and briefs, the following facts were admitted by both sides:
On May 17, 1949 Tumulty was appointed City Clerk of Jersey City for an indefinite term, and was required to enter *31 into a surety bond for $25,000. In January 1963 he was appointed Prosecutor of Hudson County.
On January 29, 1963 Tumulty wrote to the Mayor and Council of Jersey City asking for a leave of absence from his pay and duties; the letter then continued, "in consonance with the statute I have designated Thomas B. Kenny, Administrative Clerk, to act as `Acting City Clerk of the City of Jersey City.'"
On January 31, 1963 a special meeting of the Jersey City Council was held. A resolution was passed granting Tumulty a one-year leave of absence. After this resolution was adopted Tumulty (then the city clerk) reaffirmed his designation of Thomas B. Kenny to act as "Acting Clerk."
On January 31, 1963 Tumulty was sworn in as Prosecutor of Hudson County.
On February 5, 1963 the City Council of Jersey City passed a resolution wherein it stated that it had been advised that a vacancy existed in the office of city clerk and it appointed Bernard J. Rosengard city clerk for a term of one year.
On February 4, 1964 a resolution was passed by the council extending Tumulty's leave of absence to January 31, 1965. The council also reappointed Rosengard for another year from 1964 until 1965.
In addition thereto, and in accordance with the law, on May 19, 1961 Tumulty signed as principal on a $25,000 surety bond. This bond was to be in effect from May 19, 1961 until May 19, 1965.
On January 31, 1963 the bond was amended by endorsement. Tumulty's name was replaced as the insured by the name of Thomas B. Kenny, acting city clerk, for the period January 31, 1963 to February 5, 1963. On February 5, 1963 the bond was amended by endorsement to change the name of the insured to Bernard J. Rosengard, appointed city clerk succeeding Kenny, for a period from February 5, 1963 to February 5, 1964.
*32 All of the indictments against defendant Rosengard were returned by the Hudson County grand jury in December 1964 and January 1965.
Tumulty's resignation from the office of city clerk became effective on February 5, 1965, as stipulated by the State, by his failure to renew his application for leave of absence.
The above facts clearly demonstrate that when these indictments were returned, Tumulty occupied a dual position, i.e., he was the Prosecutor of Hudson County and either the City Clerk of Jersey City on leave or had a valid legal claim to said office at the time.
Was there a conflict of interest between Tumulty as prosecutor and Tumulty as a claimant to the office of city clerk that would vitiate an indictment brought against the then city clerk or acting city clerk or assistant municipal clerk of the City of Jersey City?
Under the rules of court, the Canons of Professional Ethics adopted by the American Bar Association, as amended and supplemented by the Supreme Court, govern the conduct of members of the bar of this State. R.R. 1:25. Canon 5 discusses the duty of a prosecuting attorney. It states:
"* * * The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. * * *" (Appendix to Part 1 of the rules)
In 1957 the American Bar Association published a series of opinions by its Committee on Professional Ethics. Several of the opinions dealt with the problems of conflicting interest of prosecutors. See Opinions 30, 39, 118, 142, 186 and 216. In general, the opinions emphasized the necessity of absolute confidence on the part of the public in the integrity and impartiality of the administration of justice, and they further declared that under Canon 6 it was unprofessional to represent conflicting interests. In the collection of ethics opinions published in 1956 by the Association of the Bar of the City of New York, Opinion 232 dealt with the conflicts of interest of a district attorney where he had represented the State in *33 procuring an indictment and also represented the injured person in a civil action. The committee stated:
"The district attorney should be alert not only to avoid evil but the appearance of evil. Any attempts to assume inconsistent obligations of this kind would tend to bring the administration of the law into disrepute."
In our own State our Supreme Court Advisory Committee on Professional Ethics publishes its opinions in the New Jersey Law Journal. In Opinions 4 and 8, decided in 1963 and dealing with the conflict of interest between a municipal attorney or municipal prosecutor representing persons on the civil side when they had matters before him, the committee stated:
"* * * An attorney should not only avoid all impropriety, but should likewise avoid the appearance of impropriety."
In the case of State v. D'Ippolito, 19 N.J. 540 (1955), where the prosecutor was allegedly unfair in the trial of the case the court discussed the applicability of Canon 5 as well as other canons. Said the court:
"The responsibilities of a prosecutor within his county are prescribed by N.J.S.A. 2A:158-5. * * * The quality of his performance of his duties is governed by Canon 5 of the Canons of Professional Ethics (R.R. 1:25) * * *. And he is also subject, as are all members of the bar [to the other canons]. * * *"
In State v. Detroit Motors, 62 N.J. Super. 386 (Law Div. 1960), there was a motion to dismiss the indictment on the ground that the prosecutor's partner had a civil action pending against the defendants who were indicted by the prosecutor during his term of office. Said the court:
"* * * It is inconsistent with the public interest and welfare for any law enforcement officer directly or indirectly to represent any person involved in a criminal matter, except the State, or receive any personal profit or gain as the result of the arrest, conviction or acquittal *34 of one charged with the infraction of the law or in connection with the filing of any such charge. The power or authority of the State should never be used to discover or uncover facts or evidence which might result in private profit or gain, in any manner whatsoever, to the official vested by law with such power or authority, or to the profit of any of those associated with him. The books are replete with cases indicating that any appearance of evil in connection with the administration of public office should and must be avoided; and particularly is this true of those offices involved in the enforcement of the law. Callahan v. Jones, supra." (at pp. 391-392)
The court further said:
"The above rules [conflict between prosecutor and his private practice] appear to be inviolate regardless of intent or motive. * * * Public policy appears to dictate that criminal prosecutions must be totally free of any imputation of improper influence or motive. There is inherent in the circumstances a prejudicial atmosphere affecting the indictments which is to be avoided." (at p. 394)
In State v. Deutsch, 34 N.J. 190 (1961), where the trial court refused permission for the defendant to withdraw his plea, he appealed on the ground that the judge was the brother of the prosecutor and that the prosecutor's partner was also the assistant prosecutor in charge of his case. The court, in an opinion by Justice Jacobs, stated that the tendency of courts today is to recognize a disqualification "where, in the eyes of the litigants and the public, the circumstances call justly for the judge's withdrawal." (at p. 206) See also State v. Muraski, 6 N.J. Super. 36, 38 (App. Div. 1949), cited with approval by the court in State v. Deutsch, supra.
It is clear that the Canons of Professional Ethics govern a lawyer whether the lawyer wears judicial robes or is the prosecuting attorney. In the instant case it was first represented to the court that Prosecutor Tumulty did not appear before the grand jury and did nothing personally in securing the indictments against defendant. The State subsequently retracted that representation. At the last oral argument there was presented to counsel for defendant the grand jury minutes in one of the indictments. The minutes disclosed that the prosecutor was in the grand jury room, that *35 he engaged in a colloquy with defendant Cruea, who is a codefendant of Rosengard, and that he engaged in a colloquy with members of the grand jury.
On the stipulated facts it has been amply demonstrated to this court that the prosecutor had an interest in the proceedings, within the meaning of the term "interest" as denounced by the Canons of Professional Ethics. It is apparent that he had a valid legal claim to the city clerk's office from which he had a leave of absence, and that defendant was either the city clerk or acting city clerk or assistant municipal clerk. It is also apparent from the minutes of the city council and from the newspaper articles attached to the moving affidavits that the prosecutor had tried for a long period of time to name the acting city clerk, in which endeavor he was unsuccessful. The totality of the circumstances and the relative position of the parties are such that, in the court's opinion, the public regard for the fair administration of justice is endangered. The Court so concludes as a matter of law, and that this is violative of the Canons of Professional Ethics.
There are other reasons, perhaps even more important than the violation of the Canons of Professional Ethics, why these indictments cannot stand. The prosecutor has a duty, of course, to detect and ferret out crime. See State v. Winne, 12 N.J. 152 (1953). He also has the obligation and the duty to use his judgment whether or not to proceed against a defendant in any given circumstances. Ibid. However, the exercise of that duty and that right must be accomplished so that the public at large has a feeling and an understanding that the prosecutor's objectives are completely divorced from any self-interest. Our cases have held that "interest" need not be factually proven. If from any proven facts a reasonable person may infer self-interest, then under those circumstances the prosecutor cannot act. This is the rationale of State v. Detroit Motors and State v. Deutsch, supra. This is so simply because the exercise of the prosecutor's prerogatives is the exercise of the sovereign power of the State. Law and order are, in a large measure, not maintained *36 by the enactment of criminal statutes. Law and order basically depend upon the mores of the people and their adherence to a way of life. That adherence and that way of life cannot be maintained and supported unless the public at large is convinced of the impartiality of the administration of criminal justice. Any act which tends to impair the confidence of the people or the public in the impartiality of the ones exercising the sovereign power of the State to indict and prosecute is an act which tends to destroy the mores of the people who believe in the fair and equal administration of justice. Where a prosecutor seeks to have indicted a holder of a public office and he himself is the holder of said public office on leave of absence, these facts in themselves show a prejudice, not as a matter of fact but as a matter of law, so that the prosecutor cannot personally act under such circumstances.
This does not mean that because defendant is the holder of an office in conflict with the prosecutor's position with regard to the same office, he may be free of violations of the criminal law. The prosecutor's course of action was to inform the Attorney-General's office of any violations of law that he was aware of and the proofs of same, and to ask that the Attorney-General take over the case for prosecution in its initial proceedings. This is the course of action suggested in State v. Detroit Motors, supra. In that way, and only in that way, could the public maintain its belief in the impartial, unbiased and unprejudiced use of the sovereign power to indict. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).
The court does not make any finding as to actual prejudice by the prosecutor, nor does it make any finding that the indictments were motivated by malice or ill will. Neither does it make any finding as to the legal sufficiency of said indictments. The court's finding is bottomed on the uncontroverted facts presented, that prejudice against defendant exists as a matter of law. Indictments Nos. 1158, 1159, 1161, 1166, 1165 (1963 term), indictment 398 (1964 terms), indictments *37 Nos. 1160 and 1162 (1963 term) and indictment No. 1163 (1963 term), will be dismissed as to defendant Rosengard. Leave is granted to the prosecutor (there being no problem of the statute of limitations) to present the matter to the Attorney-General for his consideration.
The court notes there are two other defendants in some of the indictments. Their position relative to the facts in this case and to Rosengard's prejudice as a matter of law may be entirely different. In any event, their position was not argued nor briefed and the court reserves their matters for further argument.