80 N.J. 353 (1979)
403 A.2d 889
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RAYMOND GEORGE TAYLOR, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued January 9, 1979.
Decided June 21, 1979.
*355 Mr. Edwin H. Stern, Deputy Attorney General, argued the cause for appellant (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. Stern, Ms. Ann Zeloof and Ms. Helen E. Szabo, Deputy Attorneys General, of counsel and on the briefs).
Mr. Roy H. Tanzman, Assistant Deputy Public Defender, argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).
The opinion of the court was delivered by HANDLER, J.
The sole question presented by this appeal is whether a defendant charged with a series of heinous crimes, facing a maximum sentence greatly exceeding life imprisonment, should be entitled to vacate his plea bargain because *356 he had not been informed that some of the charges might be merged for sentencing purposes. We considered this issue, in a somewhat different context, in State v. Nichols, 71 N.J. 358 (1976). In an unreported opinion the Appellate Division, relying on Nichols, held that the defendant should be allowed to withdraw his guilty plea in this case. We disagree. Accordingly, we reverse the judgment of the Appellate Division and reinstate that of the trial judge, denying the defendant's motion to vacate his plea.

I
A nine count indictment was presented against defendant Raymond George Taylor by a Camden County Grand Jury on August 17, 1976. The complaint arose out of an incident on August 6, 1976 in which defendant allegedly shot and killed James Liberati and Carlos Brandon in a dispute over the price of drugs he was seeking to acquire from them. The indictment contained two separate counts, charging defendant with the unlawful, premeditated and felonious murder of Liberati and Brandon, a violation of N.J.S.A. 2A:113-1 or N.J.S.A. 2A:113-2[1]; two counts charging Taylor with the murder of each victim while armed, in violation of N.J.S.A. 2A:151-5; two counts charging defendant with the robbery of Liberati and Brandon, contrary to N.J.S.A. 2A:141-1; two counts charging Taylor with committing those robberies while armed in violation of N.J.S.A. 2A: 151-5 and one count charging defendant with carrying a handgun without a permit, in contravention of N.J.S.A. 2A:151-41 (a). In addition, a separate single count accusation *357 was issued against Taylor on October 14, 1976 charging him with the unlawful possession of a .45 caliber automatic pistol without a permit on June 14, 1976 in an unrelated incident. This alleged conduct was also contrary to N.J.S.A. 2A:151-41(a).
At a retraxit hearing held on October 14, 1976 defendant informed the trial court that he wished to enter into a plea bargain with the State, under which he would retract his plea of not guilty and enter a plea of non vult to the two murder counts and guilty to the weapon accusation; in return, there would be a dismissal of all other charges and a recommendation by the State of a total sentence of not more than fifty nor less than forty years for the two murders, and a concurrent five to seven year sentence for the weapon charge.
The record reveals that the trial judge made studious efforts to comply with the safeguards of R. 3:9-2 before accepting defendant's pleas. The court considered signed statements by the defendant explicitly reciting the counts of the indictment and accusation, their corresponding potential penalties and the terms of the plea agreement, as well as defendant's intent to abide thereby. Taylor acknowledged both orally and in writing that he had agreed to the plea bargain on his own free will and that he understood the ramifications of his decision. The trial judge ascertained that defendant had discussed his alternatives thoroughly for several hours with his counsel and his father. The court satisfied itself of the factual basis underlying the pleas. Taylor's own confession acknowledging that he "shot two guys over a drug transaction when one of them came at me" was considered together with three statements by witnesses for the State corroborating defendant's role in the drug-related homicides. These statements included an eyewitness account indicating that Taylor had shot the victims in cold blood without any immediate physical provocation and suggested that the murders may have been premeditated.
Since defendant's version, if credible, may have afforded an excuse of self-defense, the trial judge made certain that *358 defendant had considered the option of raising this contention at trial before agreeing to the plea bargain. The record reveals that defendant had, in advance of the hearing, after discovery of the State's witnesses' statements, discussed the possibility of self-defense with his counsel, and, apparently, discounted it. During the hearing the trial judge told the defendant, "if there's any possibility, Mr. Taylor, that you think you're innocent or you've got a legal defense to this, I want to make sure you have your day in court." Later, just prior to accepting defendant's plea, the trial judge again warned him to consider the matter carefully because it would be difficult to retract the pleas of non vult and guilty once they were formally entered. The defendant stated he had no doubt in his mind and continued to insist, as he had throughout the hearing, that he wished to abide by the plea bargain and arranged for pleas to be entered in accordance with its terms.
Before sentencing, the defendant wrote a letter to the trial court and made a motion seeking to retract his pleas of non vult and guilty. His counsel valiantly asserted that Taylor's actions were conscientiously motivated but indicated that he himself had reservations about the wisdom of the motion. Taylor argued that he had not fully understood the doctrine of self-defense and now wanted to raise this excuse, that he had been under valium medication at the time of the previous retraxit hearing and that he had entered the plea because of "threats" from the prosecutor. The trial judge was not impressed. The motion to retract was rejected and sentence was entered in accordance with the original plea bargain, an aggregate State prison term of forty to fifty years for the murder counts inclusive of a five to seven year concurrent term on the separate weapon accusation; all other charges were dismissed.
An appeal was taken in which defendant, for the first time, argued that he should be permitted to withdraw his guilty plea because he had been misinformed by both the court and his own counsel when he entered the plea bargain as to the *359 potential extent of penal exposure had he elected to proceed to trial and then been convicted on all counts. Specifically, he maintained that under the principles of State v. Nichols, supra, he should have been informed that the robbery and armed robbery counts might have merged with the murder charges. The omission of these facts, defendant argued, had "undoubtedly * * * influenced" the plea below. He maintained essentially that since the plea was not entered into with a full understanding of the consequences of his alternatives, it was not "intelligent" and therefore should be vacated. It is worth noting, however, that defendant has never argued that he would not have entered the non vult and guilty pleas had he known of the possible merger. Indeed, the main thrust of his present appeal to this Court is that had he known that the potential sentences at stake were less he may have been able to secure a better bargain.
Counsel on both sides referred to the possibility of merger in their colloquies with the trial judge. As the Appellate Division found, however, there was no persuasive evidence showing that "defendant himself had the slightest notion of what `merger' meant." Moreover, the trial judge had, at the initial retraxit hearing, meticulously underscored at great length that defendant, in the absence of a plea bargain, could be consecutively sentenced for each of the nine indictment counts and thus faced a potential maximum of two life terms plus seventy-seven years on the indictment and an additional seven year term on the unrelated accusation. Under these circumstances, it is appropriate to proceed on the assumption that Taylor was not told of the possible merger of the robbery and armed robbery charges with the murder charges. Such a merger would have reduced Taylor's theoretical penal risk by fifty years, two lives plus thirty-four years instead of two lives plus eighty-four years.
The further question is whether such misinformation is sufficient to vitiate an otherwise valid plea. As an initial matter we must decide upon the proper standard of review of defendant's latest claim. Under our rules, a more *360 stringent standard applies where a defendant moves to retract his plea after sentencing than where he makes a similar motion before sentencing. R. 3:9-2 provides that the trial court shall not initially accept a plea of guilty or non vult until it determines it was made "with an understanding of the nature of the charge and the consequences of the plea." R. 3:9-3(e) add that "If at the time of sentencing the judge determines that the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel, the defendant shall be permitted to withdraw the plea." R. 3:21-1 states that "a motion to withdraw a plea of guilty or non vult shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice." (emphasis added). See State v. Deutsch, 34 N.J. 190, 197-198 (1961); also, State v. Herman, 47 N.J. 73, 76-77 (1966); State v. Daniels, 38 N.J. 242, 249-250 (1962), cert. den. 374 U.S. 837, 83 S.Ct. 1885, 10 L.Ed.2d 1057 (1963).
Although defendant did not specifically allude to merger in making his motion to retract the pleas of non vult and guilty, he did indicate that prosecutorial "threats" about length of sentence in part induced his pleas. Since our decision in State v. Nichols, supra, was rendered on October 28, 1976, just one day prior to the date of the motion to retract and sentence, it would be unreasonable to penalize defendant for not having specifically raised the merger argument at that moment. Accordingly, we will treat defendant's present attack on the allegedly inadequate information he received as having been timely raised before sentence. Under the applicable standard, R. 3:9-3(e), we must decide whether the "interests of justice" would be disserved by enforcing the plea arrangement.

II
Plea bargaining has become firmly institutionalized in this State as a legitimate, respectable and pragmatic tool *361 in the efficient and fair administration of criminal justice. State v. Marzolf, 79 N.J. 167, 182 (1979); State v. Brown, 71 N.J. 578, 582 (1976); State v. Thomas, 61 N.J. 314, 321-323 (1972); State v. Taylor, 49 N.J. 440, 455 (1967); State v. Brockington, 140 N.J. Super. 422, 427 (App. Div.), certif. den. 71 N.J. 345, cert. den. 429 U.S. 940, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976). Courts across the country have adopted plea bargaining as an appropriate accommodation of the conflicting interests of society and persons accused of crime and as a needed response to an ever-burgeoning case load. Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971); J. Bond, Plea Bargaining and Guilty Pleas, 2-3 (1978). "[W]hatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are imporant components of this country's criminal justice system. Properly administered they can benefit all concerned." Bordenkircher v. Hayes, 434 U.S. 357, 361-362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604, 609 (1978); Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136, 145 (1977); see Santobello v. New York, supra.
The cornerstone of the plea bargain system is the "mutuality of advantage" it affords to both defendant and the State. Bordenkircher v. Hayes, supra, 434 U.S. at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 611; Brady v. United States, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 758 (1970); State v. Corbitt, 74 N.J. 379, 394 (1977), aff'd 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). The system enables a defendant to reduce his penal exposure and avoid the stress of trial while assuring the State that the wrongdoer will be punished and that scarce and vital judicial and prosecutorial resources will be conserved through a speedy resolution of the controversy. See Brady v. United States, supra; cf. State v. Marzolf, supra, 79 N.J. at 182-183.
Since a defendant who pleads guilty or non vult waives his constitutional rights to avoid self-incrimination, *362 to confront his accusers and to secure a jury trial, McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425 (1969), our court rules are designed to assure, and the cases have uniformly held, that a guilty or non vult plea may not be entered unless the court first satisfies itself that there is a factual basis for the plea and that the plea is made voluntarily and intelligently with an "understanding of the nature of the charge and the consequences of the plea." R. 3:9-2; Henderson v. Morgan, 426 U.S. 637, 644-645, 96 S.Ct. 2253, 2257-2258, 49 L.Ed.2d 108, 114 (1976); Santobello v. New York, supra, 404 U.S. at 261-262, 92 S.Ct. at 498-499, 30 L.Ed.2d at 432-433; North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970); Brady v. United States, supra, 397 U.S. at 747, 90 S.Ct. at 1468, 25 L.Ed.2d at 756; State v. Herman, supra; State v. Deutsch, supra; State v. Rhein, 117 N.J. Super. 112, 117-118 (App. Div. 1971); State v. Smith, 109 N.J. Super. 9, 11-12 (App. Div.), certif. den. 56 N.J. 473 (1970); State v. Leckis, 79 N.J. Super. 479, 484-485 (App. Div. 1963); see State v. Brown, supra; cf. State v. Nichols, supra. After the defendant formally makes his plea, however, his claim to be relieved of its consequences must be weighed against the strong interests of the State in its finality. See, Blackledge v. Allison, supra, 431 U.S. at 71, 97 S.Ct. at 1628, 52 L.Ed.2d at 145; State v. Deutsch, supra; cf. United States v. Timmreck, ___ U.S. ___, 99 S.Ct. 2085, 60 L.Ed. 2d ___ (1979).
In this case had the State proceeded to try the homicide charges on the basis of felony-murder, the armed robbery charges would likely have merged into the murder convictions. See State v. Nichols, supra, 71 N.J. at 360; State v. Hubbard, 123 N.J. Super. 345, 352 (App. Div.), certif. den. 63 N.J. 325 (1973); cf. State v. Currie, 41 N.J. 531, 537 (1964); State v. Mowser, 92 N.J.L. 474, 481-484 (E. & A. 1919). The State points out, however, that unlike Nichols, where felony-murder was the only basis for the murder charge, here the prosecutor might have attempted to *363 prove premeditated murder, cf. State v. Christener, 71 N.J. 55, 64 (1976), in which event, the armed robberies might not have merged. As a consequence, the State asserts, it was not mandatory that defendant be advised of the sentencing ramifications on the basis of merger, since the merger issue itself could not have been resolved without a protracted hearing or a cumbersome mini-trial.
The State magnifies the difficulties entailed in deciding how a defendant is to be advised of sentencing possibilities for plea bargain purposes. The merger question in this context need not be settled with the sureness and finality of a trial. It is sufficient that, as long as a merger appears to be a possible eventuality, a defendant be apprised of this possibility and its sentencing consequences. It is noteworthy that the revised written plea statement form LR-28 which a defendant must sign prior to the entry of a plea has recently been amended to direct the court to "consider questions of merger in ascertaining the aggregate maximum sentence which could be imposed." 101 N.J.L.J. 286 (Mar. 23, 1978). Where, as here, there exists a reasonable likelihood of merger, a trial court should in all fairness to the defendant inform him of that contingency.
It does not follow that the defendant, not so informed, should be entitled to vacate his plea. A guilty plea is not to be set aside whenever the trial court procedures are less than perfect. Although a per se ruling permitting plea retraction has sometimes been utilized upon the breach of an established procedural safeguard, see, e.g., Kelsey v. United States, 484 F.2d 1198, 1200 (3 Cir.1973); cf. McCarthy v. United States, supra, 394 U.S. at 463-464, 89 S.Ct. at 1170, 22 L.Ed.2d at 424, a number of courts have ruled that whether a defendant should be permitted to vacate his plea ought to be decided on a case-by-case basis, depending upon whether the defendant can be said to have been prejudiced by the omission. See, e.g., Bachner v. United States, 517 F.2d 589, 599 (7 Cir.1975) (Stevens, J., concurring); United States v. Woodall, 438 F.2d 1317, 1329 (5 Cir.1970), cert. den. 403 *364 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); State v. Hadsell, 6 Wash. App. 946, 952-953, 497 P.2d 254, 258 (Ct. App. 1972); cf. United States v. Timmreck, supra. This latter approach has also been adopted by the American Bar Association. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, 56-57 (1967). The touchstone is basic fairness to the defendant, an approach we think eminently more serviceable in the administration of criminal justice.
In this case the merger of offenses in the event of a full trial was not a foregone conclusion. It cannot be said therefore that the information conveyed to the defendant by the trial judge was actually false or misleading. The most that can be said is that the theoretical duration of sentence was somewhat exaggerated by the failure to mention merger. We do not think, however, that on the facts presented the potential sentence was so overstated as to render the plea unfair. It is important to recognize that plea bargains are, of necessity, often made with some uncertainty. Frequently a defendant will not know exactly how strong a case will be presented against him, or what evidence the State holds will be admissible. Moreover, he cannot know the sentence ultimately to be imposed since that will depend upon the completion of a presentence investigation report, R. 3:21-2, and defendant's participation in a sentencing hearing. State v. Kunz, 55 N.J. 128 (1969). If a defendant does not "correctly assess every relevant factor entering into his decision", this will not automatically render his plea involuntary or unintelligent. Brady v. United States, supra, 397 U.S. at 756-7757, 90 S.Ct. at 1473, 25 L.Ed.2d at 761; see McMann v. Richardson, 397 U.S. 759, 769-771, 90 S.Ct. 1441, 1448-1449, 25 L.Ed.2d 763, 772-773 (1970). What is crucial is that the plea bargain has been fairly reached and that defendant's reasonable expectations drawn from the terms of the bargain have been fulfilled. State v. Marzolf, supra, 79 N.J. at 183; State v. Thomas, supra.
*365 Our system is designed to reconcile the competing interests of the State and the defendant. State v. Deutsch, supra. The State's concern is in having criminal wrongdoers account and in the finality of that accounting. The defendant is entitled to fairness and protection of basic rights. In close cases, where the defendant moves to retract his plea before sentence, the scales should usually tip in favor of defendant. Under such circumstances, "the courts in our State, in practice, generally exercise their discretion liberally to enable withdrawal of the plea and a trial on the merits * * *." Id. 34 N.J. at 198. Often a defendant seeking to vacate his plea will find it difficult to prove affirmatively that he was misled; he may be able to do little more than assert that he was deceived. See McCarthy v. United States, supra, 394 U.S. at 469, 89 S.Ct. at 1172, 22 L.Ed.2d at 427. Thus where, from an objective standpoint, it appears there is a significant possibility that the misinformation imparted to the defendant could have directly induced him to enter the plea, he should be allowed to withdraw from the bargain. Cf. State v. Brown, supra, 71 N.J. at 581-582; State v. Nichols, supra.
A court should not approach a defendant's attack upon a plea bargain with a set attitude of skepticism. Nevertheless, a defendant attacking a guilty plea has little to lose and his contentions should be assessed with great care and realism. See Blackledge v. Allison, supra, 431 U.S. at 71-72, 97 S.Ct. at 1628, 52 L.Ed.2d at 145. In some situations it will be inconceivable that the omitted information would have been a material factor on which defendant relied in making his initial plea decision. Cf. Brady v. United States, supra, 397 U.S. at 815-816, 90 S.Ct. at 1483, 25 L.Ed.2d at 802-803 (Brennan, J., concurring, sub nom. Parker v. North Carolina); State v. Phillips, 133 N.J. Super. 515, 519 (App. Div. 1975); State v. Smith, supra, 109 N.J. Super. at 12. A defendant should not be entitled to withdraw his plea as a matter of whimsy or merely because he changed his mind. State v. Huntley, 129 N.J. Super. 13, 18 (App. Div.), certif, den. 66 N.J. 312 *366 (1974). Where there is not a significant possibility of harm to the defendant from some factual inaccuracy, we render a disservice to the State and to the public if we vacate a plea every time a technical error has occurred. As Justice Cardozo once stated, "There is danger that the criminal law will be brought into contempt * * * if gossamer possibilities of prejudice are to nullify a sentence pronounced by a court of competent jurisdiction * * * and set the guilty free." Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed.2d 674, 687 (1934), quoted in United States v. Woodall, supra.
Applying these principles to the case before us, we find Taylor's situation to be readily distinguishable from that of the defendant in State v. Nichols, supra. In Nichols, it was obvious that the misrepresentation as to merger was material and that the defendant relied thereon. There, the primary benefit conferred upon the defendant under the plea bargain was the prosecutor's recommendation that he be sentenced concurrently for the armed robbery and murder charges. Concurrence of sentences, however, was not really an advantage, since had the matter proceeded to trial, those convictions would clearly have merged. Under such circumstances, the defendant's plea bargain could hardly have been characterized as intelligent.
In contrast, in this case, defendant did receive a substantial benefit. The prosecutor abandoned the possibility of pursuing more extensive sentences and recommended instead that the two possible consecutive life sentences for the murders, as well as the sentence maximums relating to all of the other charges, be reduced to two consecutive twenty to twenty-five year terms for the murders with an included concurrent term on the weapon accusation; further, he agreed that all other charges be dropped. Moreover, there was no material misrepresentation. While the staggering sentences the defendant faced were undoubtedly a factor motivating his initial pleas of non vult and guilty, the marginal differences in the length of sentences in the event of a merger *367 could hardly have been a significant factor in defendant's considerations. Since either maximum potential sentence would have assured defendant's incarceration for most, if not all, of the rest of his life, it is extremely likely that he would have pleaded non vult even if he had known of the possibility of the armed robbery merger. Hence, it is wholly implausible that the omission in this case was material or that defendant relied thereon.
Accordingly, the decision of the Appellate Division is reversed and the order of the trial judge denying defendant's motion to vacate his pleas of non vult and guilty is reinstated.
For reversal  Chief Justice HUGHES and Justices MOUNTAIN, PASHMAN, CLIFFFORD, SCHREIBER and HANDLER  6.
For affirmance  None.
NOTES
[1] The indictment on its face charged that the murders had occurred "unlawfully, feloniously and with malice aforethought." Although the short-form indictment cited only to N.J.S.A. 2A:113-1, which encompasses felony-murder, without citing N.J.S.A. 2A: 113-2, which covers all other forms of murder, it is clear that both statutory provisions were included within the ambit of the indictment. See State v. Mayberry, 52 N.J. 413, 432 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969).