**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4521-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENYADA GASTON,

     Defendant-Appellant.

_____

Submitted December 8, 2021 – Decided February 17, 2022

Before Judges Hoffman, Whipple and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 14-01-0165.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Nicole Roman, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Kenyada Gaston appeals from an April 28, 2020 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm.

I.

In January 2014, a Hudson County grand jury indicted defendant, charging him with eight counts of a fourteen-count indictment, as follows: first-degree murder, N.J.S.A. 2C:11-3(a)(l) (counts one and five); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (counts two and six); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (counts three and seven); first-degree robbery, N.J.S.A. 2C:15-1 (count four); and second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1 (count twelve).

Defendant's conviction arose out of the shooting and subsequent death of M.C. At defendant's plea hearing, he testified that on July 12, 2013, in Jersey City, he approached M.S., displayed a handgun, and demanded M.S.'s cell phone. After leaving the scene, defendant was approached by M.C., who defendant shot and killed with the handgun.

Prior to his indictment, defendant gave a statement to the Hudson County Prosecutor's Office (HCPO) admitting his involvement in the armed robbery and

fatal shooting. In the statement, defendant explained, "it was a traumatizing night" and "when I look back into my memory I have a lot of mental problems, I'm schizophrenic, I think I have post traumatic stress disorder[.]"

While in pre-trial detention at Hudson County Jail, defendant "displayed disorganized thoughts[,]" "smeared feces," and "refused psychotropic medication[.]" In October 2015, Dr. Peter D. Paul evaluated defendant to determine his competency to stand trial. Dr. Paul noted defendant was refusing to take medication at the time, but was previously taking a daily 1,000 milligram dose of Depakote and one milligram dose of Risperdal. Dr. Paul found defendant incompetent to stand trial and referred him for in-patient psychiatric hospitalization. In June 2016, defendant was admitted to Ann Klein Forensic Center for treatment.

In July 2016, Dr. Peter Gallagher evaluated defendant to determine his competency to stand trial. Dr. Gallagher found defendant to be "grossly psychotic," delusional, and having "no understanding." He found defendant incompetent to stand trial and prescribed defendant a daily ten milligrams dose of Zyprexa to treat psychosis. Dr. Gallagher again evaluated defendant in October 2016, and found defendant's condition "ha[d] improved since his admission . . . ." Ultimately, however, Dr. Gallagher again found defendant

3

incompetent to stand trial; he diagnosed defendant with schizoaffective disorder and increased defendant's Zyprexa dosage to thirty milligrams.

In December 2016, Dr. Steven Simring evaluated defendant's competency to waive his Miranda[1] rights. He noted no evidence of any recent psychotic thinking or aggressive behavior. He further noted that defendant was not prescribed medication at the time he gave his statement to the HCPO and saw no evidence that defendant needed medication at that time. Ultimately, Dr. Simring found defendant competent to waive his Miranda rights knowingly, intelligently, and voluntarily.

Dr. Simring also evaluated defendant's competency to stand trial. He found defendant no longer exhibited psychotic symptoms and "for the last several months in the hospital, [defendant] has been calm and cooperative." He opined that defendant experienced a brief psychotic episode the previous summer when evaluated by Dr. Gallagher and that such episodes "usually last[] about a month, and the individual then returns to his [] premorbid level of functioning." Accordingly, he noted defendant "responded rapidly to treatment" and "has been largely symptom-free for almost [six] months." Dr. Simring

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

ultimately determined defendant was able to collaborate with counsel and understand plea negotiations and the criminal trial.

In February 2017, Dr. Heidi Camerlengo evaluated defendant. Dr. Camerlengo found defendant "able to sustain adequate attention despite the interview occurring in a multi-purpose room that was loud and at times distracting." She also found defendant "recognizes these charges are serious and understands that he could face imprisonment if convicted." She ultimately determined defendant to be psychologically stable but recommended defendant continue treatment for psychosis and substance abuse while waiting to appear in court.

In May 2017, pursuant to a negotiated plea agreement, defendant pleaded guilty to amended counts of first-degree aggravated manslaughter and first-degree robbery. In July 2017, the trial judge sentenced defendant to an aggregate term of twenty-five years imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, (NERA), imposed fines and penalties, and dropped the remaining charges. This sentence ran concurrently to another sentence under Indictment 13-05-1070. Defendant appealed his sentence, which we affirmed on an Excessive Sentence Oral Argument calendar on September 25, 2018.

A-4521-19

In May 2019, defendant filed a pro se petition for PCR. Defendant was assigned PCR counsel, who filed a brief in support of the petition. Defendant also submitted his own certification, asserting he did not understand the strengths and weaknesses of the State's case, that "it was questionable" whether he was competent to enter his guilty plea, and that he did not make an informed decision to enter his guilty plea.

In January 2020, the PCR judge heard oral argument on defendant's petition and then scheduled an evidentiary hearing on February 27, 2020. On that date, the judge heard extensive testimony from defendant's plea counsel. On April 28, 2020, the judge issued a written opinion denying defendant's petition, finding no evidence a suppression motion would have been successful and no evidence defendant was unable to properly enter a guilty plea. Although the judge found trial counsel was deficient in failing to investigate and discuss diminished capacity and insanity defenses, she found that defendant failed to provide any evidence of diminished capacity or insanity at the time of the subject offenses to demonstrate prejudice.

This appeal followed, with defendant raising the followings arguments:

POINT I

THE PCR COURT ERRED IN DENYING MR. GASTON'S PETITION FOR POST-CONVICTION

RELIEF AS PRIOR COUNSEL WAS INEFFECTIVE IN FAILING TO HAVE MR. GASTON'S CAPACITY EVALUATED PRIOR TO PLEADING GUILTY.

POINT II

THE PCR COURT ERRED IN DENYING MR. GASTON'S PETITION FOR POST-CONVICTION RELIEF AS PRIOR COUNSEL WAS INEFFECTIVE IN FAILING TO FILE A MOTION TO SUPPRESS MR. GASTON'S STATEMENT TO POLICE AS HE WAS MENTALLY IMPAIRED WHEN HE SPOKE WITH THEM.

POINT III

THE PCR COURT ERRED IN DENYING MR. GASTON'S PETITION FOR POST-CONVICTION RELIEF AS THE PCR COURT AGREED PRIOR COUNSEL WAS INEFFECTIVE IN FAILING TO EXPLORE DEFENSES SUCH AS INSANITY OR DIMINISHED CAPACITY YET FAILED TO FIND MR. GASTON WAS PREJUDICED AS A RESULT.

POINT IV

THE PCR COURT ERRED IN DENYING MR. GASTON'S PETITION FOR POST-CONVICTION RELIEF AS APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO SEEK A REMAND AS MR. GASTON'S PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN AS HE WAS OFF HIS MEDICATIONS AND INCOMPETENT.

A-4521-19

## II.

We use a deferential standard of review on an appeal of a denial of a PCR petition following an evidentiary hearing. State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). The factual findings made by a PCR court following an evidentiary hearing will be accepted if they are based on "sufficient credible evidence in the record." Ibid. (quoting State v. Nash, 212 N.J. 518, 540 (2013)). In contrast, we afford no deference to a PCR court's interpretation of the law and apply a de novo standard. State v. Harris, 181 N.J. 391, 415-16 (2004). "[F]or mixed questions of law and fact, we give deference . . . to the supported factual findings of the trial court, but review de novo the lower court's application of any legal rules to such factual findings." Ibid.

To establish a claim of ineffective assistance of counsel, defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under that test, a defendant must prove: (1) counsel's performance was objectively deficient; and (2) counsel's deficient performance prejudiced defendant to the extent that he was deprived of his right to a fair trial. Fritz, 105 N.J. at 58 (citing Strickland, 466 U.S. at 687). Prejudice means "a

reasonable probability" the deficient performance "materially contributed to defendant's conviction." Ibid.

On appeal, defendant focuses his argument on contentions that his trial counsel was ineffective in failing to have defendant's mental capacity evaluated before pleading guilty, failing to file a motion to suppress his statement to police, and failing to investigate insanity and diminished capacity defenses. He further contends appellate counsel failed to challenge the validity of his guilty plea.

Regarding Point I, we note that a defendant must enter a guilty plea voluntarily, knowingly, and intelligently. See State v. Taylor, 80 N.J. 353, 362 (1979). That requirement is specifically imposed by Rule 3:9-2, which states:

> The court . . . shall not accept [a guilty] plea without first addressing the defendant personally . . . and determining by inquiry of the defendant and others, in the court's discretion . . . that the plea is made voluntarily, not as the result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

If defendant was not on any medications and his mental illness interfered with his capacity to enter a guilty plea voluntarily, knowingly, and intelligently, counsel should have raised this issue. However, this argument is based upon an inaccurate representation of defendant's statement to the trial court. Defendant

9

claims he "informed the trial court [and counsel] that he was not taking medications" and contends this statement should have alerted the trial judge and counsel. But the plea hearing transcript reveals the trial judge asked defendant, "are you on any medication that would prevent you from understanding what's happening in court today?" To which defendant responded, "No." Defendant provides no evidence, even a certification, that he was not taking his prescribed medications to treat his mental illness when he entered the guilty plea, or that some other fact affected his ability to properly do so.

Furthermore, a full review of the record reveals no evidence to suggest defendant lacked the requisite capacity when entering his guilty plea. Dr. Simring and Dr. Camerlengo independently found defendant competent to stand trial and enter a guilty plea. Defendant acknowledged at his plea hearing that he understood the consequences of the guilty plea, had enough time to review the plea agreement with counsel, was satisfied with counsel's services, and voluntarily waived his rights. Defendant did not interject or state that he did not understand the proceedings, nor did he exhibit behavior evidencing confusion or lack of capacity. We therefore find no basis to disturb the PCR judge's finding on this issue.

Regarding Point II, we find the PCR judge properly rejected defendant's claim that his counsel was ineffective by failing to move to suppress defendant's statement to the HCPO. Where a defendant asserts his counsel was ineffective by failing to file a motion, the defendant must establish that the motion would have been successful. "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion[.]" State v. O'Neal, 190 N.J. 601, 619 (2007).

The United States Supreme Court has held the following inquiry should occur to determine whether a defendant's waiver of Miranda rights "is made voluntarily, knowingly and intelligently":

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.
>
> [Moran v. Burbine, 475 U.S. 412, 421 (1986).]

The record demonstrates defendant knowingly, voluntarily and intelligently waived his Miranda rights before giving uncoerced statements to

11

police. The HCPO properly administered defendant's <u>Miranda</u> warnings and explained defendant's rights in clear and unequivocal terms, before questioning defendant. Defendant initialed and signed each of the warnings on his <u>Miranda</u> form. Defendant then agreed to waive his rights and give a written statement, acknowledged responsibility for the crimes, and provided a clear, detailed account of his involvement.

Although defendant asserts that he was not on the medication prescribed to treat his mental illness when he waived his <u>Miranda</u> rights, Dr. Singer "saw no medical evidence" that he needed such medications at the time. In making this determination, Dr. Singer reviewed defendant's prior evaluations and hospital records, defendant's statement to the HCPO, the parties' letter-briefs, and other available discovery. Ultimately, Dr. Singer found "to [a] reasonable degree of medical probability, that [defendant] understood his <u>Miranda</u> rights and [] was able to give a statement that was knowing, intelligent, and voluntary." Defendant, on the other hand, provides no evidence or certification of mental illness at the time, his medications prescribed at the time, their effect on his mental illness, or the effect of not taking those medications on his ability to waive his <u>Miranda</u> rights. Therefore, this argument is based on bald assertions

that lack merit, and a suppression motion filed on defendant's behalf would similarly lack merit.

Next, with respect to Point III, defendant contends that trial counsel should have investigated diminished capacity and/or insanity defenses in light of defendant's statement to HCPO that he suffered from mental illness and his history of mental illness.

The PCR judge agreed this argument has merit, finding that trial counsel's failure to investigate such defenses amounted to deficient performance, thereby satisfying the first Strickland prong. However, addressing the second Strickland prong, the judge found no prejudice to defendant because he did not assert that "if such defenses had been discussed with him that he would not have [pled] guilty" and "did not submit any evidence . . . that he was in fact suffering from diminished capacity or insanity when the offenses took place."

We agree with the PCR judge's findings on the issue of prejudice, as the record lacks competent evidence demonstrating defendant's diminished capacity or insanity when he committed the charged offenses. The only evidence even suggesting defendant experienced diminished capacity or insanity when committing the charged offenses is his statement to the HCPO that he has "a lot of mental problems," is schizophrenic, and "think[s]" he has post-traumatic

stress disorder. Defendant provides no evidence of mental health issues until 2015, approximately two years after the charged offenses occurred. Most importantly, defendant did not certify that he was experiencing mental health issues when he committed the charged offenses, let alone that such mental health issues interfered with his ability to form the requisite mental state to commit said offenses.

Lastly, regarding Point IV, we find defendant's claim that appellate counsel was ineffective by failing to challenge the validity of his guilty plea on appeal also lacks merit. Here, defendant refashions the argument that he lacked capacity to enter the guilty plea because he was off his medications. For the same reasons previously discussed, we find no merit to this argument as it applies to appellate counsel. See State v. Guzman, 313 N.J. Super. 363, 374 (App. Div. 1998) (holding that the same standards apply to claims of ineffective assistance of trial and appellate counsel).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4521-19