# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4256-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WAYDE M. DELHAGEN,

     Defendant-Appellant.

_____

     Submitted January 25, 2022 – Decided July 25, 2022

     Before Judges DeAlmeida and Smith.

     On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 20-01-0012.

     Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

     Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent (Carey J. Huff, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Wayde M. Delhagen appeals his sentence after pleading guilty to a third-degree burglary and four separate fourth-degree stalking offenses. He agreed to a sentence of five years' probation, with 364 days in the Monmouth County jail, and entry of a stalking restraining order for the protection of D.M.M., D.A.M., and C.M.[1]

On appeal, defendant argues the trial court erred at sentencing when it rejected defendant's application to amend the permanent restraining order to which he originally agreed. Defendant proposed an amendment to the restraining order that would restrict him from being within 1,500 feet of the victims' home.[2] Defendant contends the trial court had the power to amend the restraining order because it was a term in the plea agreement. The restraining order prohibited defendant from entering a restricted zone around the victims' home in Neptune. We affirm.

---

[1] We use initials to protect the privacy of the victims pursuant to Rule 1:38-3.

[2] The proposed amendment would allow defendant to reside at his aunt's house in Neptune, but he would remain at least 1,500 feet from the victims' home. Under the current restraining order, defendant is prohibited from entering or residing at either the victims' house or his aunt's house.

A-4256-19

I.

Defendant pled guilty to one count of third-degree burglary, N.J.S.A. 2C:18-2, and four counts of fourth-degree stalking, N.J.S.A. 2C:12-10.[3] In exchange, the State agreed to a sentence of five years' probation subject to a term of 364 days in the county jail. Defendant was also required to attend mental health and substance abuse treatment, and to comply with all accompanying recommendations. Defendant signed and agreed to entry of a permanent restraining order pursuant to N.J.S.A. 2C:12-10.1.[4] The order contained certain restrictions, including a prohibition against defendant

---

[3] During his plea allocution, defendant admitted that he burglarized D.A.M. and D.M.M.'s home. He testified that he entered the house through a bedroom window and took pieces of D.M.M.'s clothing. Defendant admitted that he did not live there, nor did he have permission to enter the victims' home. Defendant also admitted to sending multiple unwanted messages and making multiple unwanted phone calls to the victims, including: sending a digital message to C.M., threatening to rape her; sending multiple messages to J.M. containing inappropriate pictures of C.M., her daughter; sending threatening messages to J.M., demanding that she answer his communications, or that if she did not, "your daughter [C.M.] will pay instead"; sending messages to D.A.M. to tell her that he was coming to her house and including an image of her house to show that he knew where D.A.M. lived; and sending D.M.M., D.A.M.'s mother, unwanted messages that "her daughter [D.A.M.] was selling her body." Defendant testified during the allocution that he knew the victims would be threatened by these calls and messages.

[4] Defendant's four stalking pleas operated as an application for a permanent restraining order limiting the contact of defendant with the victims. N.J.S.A. 2c:12-10.1(a). The court conducted the required hearing under N.J.S.A. 2C:12-10(b) during its plea colloquy with defendant and his counsel.

returning to a two city-block restricted zone around the victims' home and from having any contact with the victims and their families. The court asked defendant whether he understood that he could "no[t] return to the scene of [the victims' home]," and that he "agree[d] to consent to that restraining order at the time of sentence[ing] . . . ." Defendant responded that he understood.

The court also asked defendant whether he understood the conditions of the proposed plea agreement. Defendant replied that he understood. He indicated that he reviewed the plea forms with counsel, who answered all of his questions, and that he signed the agreement. Defendant stated to the court that he understood all of the consequences of his guilty plea. The court found defendant entered into the plea "knowingly, voluntarily, and certainly with the assistance of competent counsel." The court also found an "adequate factual basis" grounded in defendant's testimony, and it accepted the plea.

At sentencing, defendant proposed an amendment to the agreed upon restraining order.[5] Defendant proposed modifying the restraining order to prohibit defendant from being within 1,500 feet of D.A.M. and D.M.M.'s residence. Defendant argued that his proposed modification gave the victims

---

[5] Defendant did not seek to withdraw the guilty plea. Rather, defendant asked the court to amend the restraining order and then continue with sentencing.

A-4256-19

more protection than the agreed upon restraining order, which prohibited defendant from entering a two city-block radius around the victims' home.

The sentencing court denied the application, finding it did not have the discretion to modify the restraining order contained in the plea. The court found defendant agreed "to the entry of a stalking restraining order as to each of the victims, [and] specifically agreed to the terms . . . at the time of the plea agreement." The sentencing court concluded that it was not empowered to "literally take over the [plea] agreement and fashion its own terms, striking from the bargained-for agreement vital terms that provided substantial consideration for the initial agreement." The court sentenced defendant in accordance with the original plea agreement, including the terms of the original restraining order.

Defendant appeals, contesting the sentencing court's rejection of his proposed amendment to the restraining order.

POINT I

THE TRIAL COURT'S DECISION THAT IT LACKED DISCRETION TO ALTER THE LANGUAGE OF THE STATE'S PROPOSED RESTRAINING ORDER WAS [AN] ERROR, AS THE PLEA AGREEMENT DID NOT SPECIFY THE TERMS OF THE ORDER, AND THE ISSUANCE OF AN ORDER OF THE COURT IS A JUDICIAL

5

FUNCTION WHICH MAY NOT BE USURPED BY
THE EXECUTIVE.

## II.

Plea bargaining is "firmly institutionalized" in New Jersey as a "legitimate, respectable and pragmatic tool in the efficient and fair administration of criminal justice."  State v. Means, 191 N.J. 610, 618 (2007) (citing State v. Taylor, 80 N.J. 353, 360-61 (1979)).  The major benefit of plea bargaining is the "mutuality of advantage" it affords the defendant and the State.  Ibid.  The benefits include the defendant reducing their penal exposure and avoiding the stress of trial, while simultaneously allowing the State to punish wrongdoers and conserve judicial resources.  Ibid.

All "plea-bargain jurisprudence recognizes the important interest of finality to pleas."  Id. at 619 (quoting State v. Smullen, 118 N.J. 408, 416 (1990)).  Where a defendant does not move to withdraw their guilty plea, the terms and conditions of a plea agreement "must be meticulously carried out."  State v. Jones, 66 N.J. 524, 530 (1975).  A plea bargain is governed by contract principles and "informed by basic principles of contract law."  Means, 191 N.J. at 622.  Ultimately, the plea-bargaining process is guided by "notions

A-4256-19

of fairness," which "apply to each side in the plea bargaining process." State v. Bellamy, 178 N.J. 127, 134 (2003).

Under N.J.S.A. 2C:12-10.1(a), a judgment of conviction for stalking operates "as an application for a permanent restraining order" limiting defendant's contact to their victim. A permanent restraining order hearing shall be held at the time of the verdict or guilty plea—not at the time of sentencing. N.J.S.A. 2C:12-10.1(b).

III.

We note that defendant did not seek to withdraw from the plea agreement entirely. Instead, defendant sought leave to modify one term, the permanent restraining order. The sole issue before us is whether the sentencing court should have modified the terms of the valid plea agreement. On this record, the clear answer is no.

Where a defendant does not move to withdraw a guilty plea, the court may vacate the plea sua sponte if it determines that any of the plea agreement terms are unfair. R. 3:9-3(e). However, nowhere in Rule 3:9-3(e) is a trial court permitted to vacate or amend a plea. Rather, the only remedy to address an invalid plea agreement is to vacate the entire guilty plea and restore "both

A-4256-19

parties to their positions prior to the trial court's acceptance of the plea."  State v. Campfield, 213 N.J. 218, 232 (2013).

The sentencing court did not err in refusing to amend the restraining order contained in the plea agreement, as there was no factual or legal predicate to do so.  The court recognized that if a plea is not vacated, then "the terms and the conditions of this plea bargain must be meticulously carried out."  The trial court only had the power to vacate the entire plea, an option defendant rejected at sentencing.

Defendant argues that the plea did not specify the precise terms of the order.  Defendant therefore posits the sentencing court had the ability to "alter" the restraining order, essentially because the order was a blank canvas at sentencing.  We disagree, as the record shows there was specificity in the restraining order.  Defendant agreed to the restraints against entering two city blocks in Neptune, knowing they would prohibit him from living at his aunt's house.[6]  Defendant concedes that the restraining order terms "[were] presented . . . as . . . take it or leave it," and he took it.  The terms and conditions of this guilty plea, agreed to by the parties and the court, "must be meticulously

_____

[6] Defendant has not argued before the sentencing court, or before us, that he is without housing options.  The record shows defendant had an out-of-state address at the time of his plea and that he has alternate living arrangements if he cannot live with his aunt.

carried out." See Jones, 66 N.J. at 530; See also State v. Pennington, 154 N.J. 344, 362 (1998). We discern no reason to disturb the sentencing court's well supported order.

To the extent that we have not addressed any remaining arguments by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION