**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0228-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JASON FRENCH, a/k/a
JASON HAUGHEY,

    Defendant-Appellant.

_____

Submitted July 30, 2024 – Decided August 30, 2024

Before Judge Rose and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 22-02-0233.

Jacobs & Barbone, PA, attorneys for appellant (Louis M. Barbone, on the brief).

William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Matthew T. Mills, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following adverse decisions on his pretrial motions, defendant Jason French pled guilty to second-degree certain persons not to possess firearms, N.J.S.A. 2C:39-7(b)(1), charged in a multiple-count Atlantic County indictment, and was sentenced to a five-year prison term with a five-year parole disqualifier under the Graves Act, N.J.S.A. 2C:43-6(c). The remaining seven weapons and drug-related offenses were dismissed on the State's motion. Defendant also agreed to forfeit the sawed-off shotgun at issue.

On appeal, defendant challenges the denial of his presentencing motion to withdraw his guilty plea. More particularly, defendant raises a single point for our consideration:

> THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION TO WITHDRAW HIS PLEA PRIOR TO SENTENC[ING], WAS AN ABUSE OF DISCRETION; THE COURT'S ERRORS AS A MATTER OF LAW, DENIED . . . DEFENDANT A FAIR HEARING AND THE INTERESTS OF JUSTICE ARE NOT SERVED BY ENFORCING DEFENDANT'S [GUILTY] PLEA.

We reject these contentions and affirm.

I.

We summarize the pertinent facts and procedural history from the limited record provided on appeal. On November 25, 2021, defendant, Jamie Winters, Jenny Mangano, Richard Kelly, and Vincente Luna were arrested after a search

2

A-0228-23

warrant was executed at defendant's Egg Harbor Township residence, garage, and camper. The search warrant was supported by the November 18, 2021 certification of the lead detective assigned to the Gangs, Guns, and Narcotics Unit of the Atlantic County Prosecutor's Office.

According to the certification, in October 2021, a confidential informant (CI) advised the detective that defendant and Winters utilized their residence to distribute crystal methamphetamine. Further, "The CI advised that recently she/he observed [defendant] in possession of two . . . handguns and a sawed-off shotgun at their residence." Twice during the week of November 7, 2021, the CI purchased crystal methamphetamine from defendant and Winters at the direction and under control of law enforcement officers.

During the grand jury hearing, the lead detective testified that during the 5:00 a.m. execution of the search warrant on November 23, 2021, defendant, Winters, and Mangano were "located in the family room and then [defendant] ran into the rear of the residence, into a bedroom." Police followed defendant into the bedroom and observed "[a] sawed-off shotgun . . . . leaning against the wall." The shotgun was defaced. Shotgun shells were found in the bedroom with the shotgun. Police also seized a Taurus 9-millimeter handgun from the

3

family room "in plain sight . . . . on a fax machine." Crystal methamphetamine was seized from the residence and camper.

After defendant's motion to dismiss certain counts of the indictment was denied and his motion to compel production of outstanding discovery "was withdrawn upon the State's representation that no body-worn camera footage from the search warrant execution existed," the case was listed for trial. Shortly thereafter, on March 16, 2023, defendant entered his guilty plea before the Criminal Division presiding judge. See R. 3:9-3(g) (requiring the presiding judge's approval after a trial date has been scheduled).

During the plea hearing, defendant acknowledged at the time of his arrest, he "was in [his] living room" and "possess[ed] . . . a Stevens shotgun," which was "in the bedroom." Defendant further acknowledged he "knew it was there" and "could put [his] hands on it if [he] needed to." Further, he admitted he was previously convicted of a robbery offense and, as such, it was "unlawful for [him] to have firearms." The judge accepted the guilty plea, finding defendant "entered []his plea freely and voluntarily." Over the State's objection, defendant was released pending sentencing.

Prior to sentencing before a different judge, defendant moved to withdraw his guilty plea. To support his motion, defendant submitted the May 30, 2023

notarized "affidavit" of Luna, "assum[ing] full responsibility for both guns, the 9mm and the sawed[-]off shotgun as neither of these weapons belonged to any other codefendant in this case." Luna claimed he had "just begun to reside at [defendant's residence] . . . [i]n October 2021" and "was moving the remainder of [his] belongings into the house the night of the raid." He further stated the weapons seized by police "were [his] and [his] only." Luna continued:

> As such, I respectfully [request] that the charges are assigned to me specifically and removed from the other co-defendants.
>
> I feel that it is both the right and proper thing to do to take responsibility for my items that were recovered during this raid as I'd like to start my sentence[1] with a clear conscience.

Following argument, the judge denied defendant's motion. In her oral decision, the judge noted she had not entered defendant's guilty plea but had reviewed the transcript of the plea hearing. Citing the governing legal principles, the judge found defendant failed to satisfy the four-pronged test

---

[1] In their appellate briefs, the parties acknowledge Luna pled guilty only to owning and possessing the 9-millimeter handgun. In her September 30, 2023 written decision on the present motion, the judge referenced Luna's February 2, 2023 plea hearing. However, the parties neither provided the transcript of Luna's plea hearing nor a copy of his plea agreement.

enunciated by our Supreme Court in State v. Slater, 198 N.J. 145 (2009). The judge concluded the interests of justice did not warrant relief. See R. 3:9-3(e).

Defendant was sentenced the same day and gave the following statement, in pertinent part:

> The entire time I've been fighting this I have said this isn't my gun. I didn't know where it was in the house. It's not my [bed]room. I wasn't going into that room when the [police] came in. I was coming out of the bathroom, which is a completely different direction. They lied. I have asked for body cameras, I have asked them to at least release the footage from the hard drives that they took.
>
> I'm not going to say that I was, you know, not breaking the law for drugs and stuff like that, but, you know, I learned a long time ago not to play with guns. All I did was allow people into my home. I gave them a safe place to stay and this is what I got.
>
> . . . .
>
> I understand that I pled guilty. I didn't want to lose my house. I had to get out there and get – I had squatters in there. I had probably fifty, sixty thousand dollars' worth of damage, plus a bunch of my tools that got stolen. My truck got stolen. My motorcycle got stolen. I lost almost everything. So, you can appreciate the disparity, the desperation for why I took a deal just to get out [of jail] for a little bit and fix everything.
>
> It's, you know, on the record that I've got two convictions. They were both at the same time for BB guns. But I stood tall and I acknowledged what I did and I took the sentence and I went in. I didn't make any

A-0228-23

excuses. But today I'm being convicted of something and it's, it's just not true. You know, I'm sorry that I lied and said that it was just so I could get out. I was desperate. I don't need to explain what jail is like, but it's hell. And if I deserved it, I wouldn't even be talking right now. I would just sit down and take it, but I don't . . . .

Shortly after the sentencing hearing, the judge issued a written decision supplementing her oral decision.

II.

As the motion judge correctly recognized, when a defendant moves to withdraw a guilty plea agreement before sentencing, the standard for the court's determination is whether it is in "the interests of justice." R. 3:9-3(e). A decision on a motion to vacate a guilty plea is committed to the sound discretion of the motion judge. State v. Bellamy, 178 N.J. 127, 135 (2003). We will reverse a court's decision denying a "defendant's request to withdraw his [or her] guilty plea . . . only if there was an abuse of discretion which renders the lower court's decision clearly erroneous." State v. Simon, 161 N.J. 416, 444 (1999). "A denial of a motion to vacate a plea is 'clearly erroneous' if the evidence presented on the motion, considered in light of the controlling legal standards, warrants a grant of that relief." State v. O'Donnell, 435 N.J. Super. 351, 372

A-0228-23

(App. Div. 2014) (quoting State v. Mustaro, 411 N.J. Super. 91, 99 (App. Div. 2009)).

"[T]he burden rests on the defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits." Slater, 198 N.J. at 156 (quoting State v. Smullen, 118 N.J. 408, 416 (1990)). A defendant must also demonstrate why that defense was not raised at the time of the plea. Id. at 160 (citing State v. Gonzalez, 254 N.J. Super. 300, 303 (App. Div. 1992)). "Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which [the] defendant must overcome before he will be allowed to withdraw his plea." Simon, 161 N.J. at 444 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

A trial court must consider and balance four factors when evaluating a motion to withdraw a guilty plea:  "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of [the] defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." State v. Munroe, 210 N.J. 429, 442 (2012) (quoting Slater, 198

N.J. at 157-58). "No single Slater factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'" State v. McDonald, 211 N.J. 4, 16-17 (2012) (quoting Slater, 198 N.J. at 162).

The first Slater factor focuses on whether a defendant has asserted a colorable claim of innocence. "A core concern underlying motions to withdraw guilty pleas is to correct the injustice of depriving innocent people of their liberty." Slater, 198 N.J. at 158. "A colorable claim of innocence is one that rests on 'particular, plausible facts' that, if proven in court, would lead a reasonable factfinder to determine the claim is meritorious." Munroe, 210 N.J. at 442 (quoting Slater, 198 N.J. at 158-59). In weighing such motions, trial courts must bear in mind that "[a] bare assertion of innocence is insufficient to justify withdrawal of a plea." Slater, 198 N.J. at 158. Rather, the defendant must present "specific, credible facts and, where possible, point to facts in the record that buttress [his or her] claim." Ibid. In making that determination, the court may consider evidence disclosed in discovery. Ibid. There must be more than just a "change of heart" to warrant leave to withdraw a guilty plea once entered. Id. at 157. "However, when there are colorable reasons for withdrawal, coupled with an appropriate assertion of innocence, 'arguments against

permitting withdrawal of a plea prior to sentencing weaken considerably' absent unfair prejudice or advantage." Id. at 162 (quoting Smullen, 118 N.J. at 417).

The second Slater factor focuses on whether the defendant "presented fair and just reasons for withdrawal" of the guilty plea and considers the effectiveness of those reasons. Slater, 198 N.J. at 159. Although we are not to approach the reasons for withdrawal with "skepticism," we "must act with 'great care and realism' because defendants often have little to lose in challenging a guilty plea." Id. at 160 (citing State v. Taylor, 80 N.J. 353, 365 (1979)). Our courts have identified a number of reasons that warrant withdrawal of a plea. These reasons include whether:

> (1) the court and prosecutor misinformed the defendant about a material element of the plea negotiation, which the defendant relied on in entering his plea; (2) the defendant was not informed and thus did not understand material terms and relevant consequences of the guilty plea, namely, the direct, penal consequences of the plea; (3) [the] defendant's reasonable expectations under the plea agreement were not met; and (4) the defendant has not only made a plausible showing of a valid defense against the charges, but also credibly demonstrated why that defense "was forgotten or missed" at the time of the plea.
>
> [Slater, 198 N.J. at 159-60 (internal citations omitted).]

As to the third Slater factor, a defendant has a heavier burden in seeking to withdraw a plea entered as part of a plea bargain. Ibid. However, because

"the vast majority of criminal cases are resolved through plea bargains . . . [the Court did] not suggest that this factor be given great weight in the balancing process." Id. at 161.

As to the fourth Slater factor, "[t]here is no fixed formula to analyze the degree of unfair prejudice or advantage that should override withdrawal of a plea." Slater, 198 N.J. at 161. Rather, "courts must examine this factor by looking closely at the particulars of each case." Ibid. The Court suggested that trial courts consider the State's loss of, or inability to locate, essential witnesses for trial, and whether the passage of time has affected the State's ability to present important evidence. Ibid.

With these seminal principles in view, we turn to the motion judge's application of the Slater factors. As to the first factor, the judge rejected defendant's contention that he "maintained and asserted his claim of innocence throughout a full year of litigation while he remained incarcerated, but at the time of his [guilty] plea, he 'simply gave up.'" The judge found defendant failed to "present specific, credible facts to support his claim of innocence." Citing defendant's factual basis supporting his guilty plea, the judge noted "defendant admitted [he] did have possession of the shotgun in the home, and while it was

in his bedroom, defendant knew where it was and would be able to access it at any time."

As to the second Slater factor, the judge noted defendant relied solely on Luna's affidavit as the reason for his withdrawal application, which was not available when defendant pled guilty. Although the judge recognized the timing of Luna's statement, the judge rejected the form of the affidavit for failure to comply with Rule 1:4-4(b). Finding the affidavit was not certified, the judge found "there [wa]s no sworn statement under oath" that "Luna possessed these weapons." The judge further recognized Luna "did not admit . . . ownership of both guns" when he pled guilty on February 2, 2023.

Turning to the third Slater factor, the judge noted defendant's guilty plea was entered pursuant to a plea bargain. Although the factor weighed against defendant, the judge found "the motion did not turn on this issue."

The judge found the fourth factor weighed in the State's favor because Luna's plea agreement was conditioned upon resolution of all other co-defendants' matters. Accordingly, the judge found Luna's "affidavit and [defendant's] plea withdrawal would not only affect the State's case" regarding defendant, but also all other co-defendants in this case.

A-0228-23

On appeal, defendant challenges the judge's findings on all four Slater factors. Maintaining "he lied during his plea colloquy when he told [the presiding judge] that he possessed the shotgun," defendant claims he "justified" that statement "by admitting that the shotgun was within his house" and "he knew it was there upon arrest." Defendant does not challenge the sufficiency of his factual basis. Rather, he claims Luna's affidavit constituted "new evidence that proved his innocence." As to the second factor, defendant also claims the motion judge erroneously cited Rule 1:4-4(b), which governs certifications, rather than Rule 1:44-4(a), which governs affidavits.[2]

Having considered defendant's contentions in view of the applicable law and our deferential standard of review, we conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). Although we part company with the judge's determination that Luna's affidavit failed to comply with the court rule – and as defendant correctly argues the judge incorrectly cited the rule governing certifications – we discern no reason to disturb the order under review. We add the following comments.

---

[2] Regarding the fourth factor, defendant incorrectly asserts the judge erroneously determined his plea was conditioned on the resolution of all other co-defendants when, as noted, the judge referred to Luna's contingent plea agreement.

N.J.S.A. 2C:39-7(b)(1) requires a showing that a defendant knowingly purchased, owned, possessed, or controlled a firearm. Thus, even if Luna owned the shotgun, his affidavit did not contradict defendant's sworn statement that he "possessed" the gun when police executed the search warrant. As the pertinent model jury charge explains[3]:

> To possess an item under the law, one must have a knowing intentional control of that item accompanied by a knowledge of its character. So, a person who possesses the firearm must know or be aware that he possesses it, and he must know what it is that he possesses or controls, that is, that it is a firearm.
>
> . . . Possession cannot merely be a passing control, fleeting or uncertain in its nature. . . . In other words, to "possess" within the meaning of the law, the defendant must knowingly procure or receive the item possessed or be aware of his control thereof for a sufficient period of time to have been able to relinquish his control if he chose to do so.
>
> A person may possess _____ (an item) even though it was not physically on his person at the time of the arrest, if he had in fact, at some time prior to his arrest, had control over it.
>
> Possession means a conscious, knowing possession, either actual or constructive.

_____

[3] We cite the model jury charge in effect at the time of defendant's conviction. The model jury charge was revised on November 13, 2023, but the quoted language was not revised.

[See Model Jury Charges (Criminal), "Certain Persons
Not to Have Any Firearms (N.J.S.A. 2C:39-7(b)(1))"
(rev. Feb. 12, 2018) (footnote omitted).]

Having acknowledged he "knew [the gun] was [in the bedroom]" and "could put [his] hands on it if [he] needed to," defendant admitted he exercised possession or control over the shotgun at the time of his arrest.

Moreover, as the motion judge correctly observed: "When evaluating a defendant's claim of innocence, courts may look to evidence that was available to the prosecutor and to the defendant through our discovery practices at the time the defendant entered the plea of guilt." See Slater, 198 N.J. at 158. The lead detective's certification, disclosed in discovery, underscores defendant's possession and control over the gun. Specifically, as memorialized in the certification, the CI observed defendant in possession of weapons including a sawed-off shotgun at the residence.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0228-23